IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAGALI VILLARREAL, Individually and on Behalf of the Estate of JA1, Deceased, and as Next Friend of JA2, a minor,<br><br>　　Plaintiff,<br><br>V.<br><br>NAVISTAR, INC., NAVISTAR INTERNATIONAL CORPORATION, IC BUS, LLC, and IC BUS OF OKLAHOMA, LLC,<br><br>　　Defendants. | §§§§§§§§§§§§§§§§ | Civil Action No.<br>3:20-cv-2980-X |

**PLAINTIFFS' LIMITED MOTION FOR RECONSIDERATION OF COURT ORDER (DKT. NO. 62) AND FINAL JUDGMENT (DKT. NO. 63) AS TO THE STRICT LIABILITY DESIGN DEFECT CLAIM ONLY**

Under Fed. R. Civ. P. 59(e) and 60(b), Plaintiffs file this Limited Motion for Reconsideration of Court Order (Dkt. No. 62) and Final Judgment (Dkt. No. 63) as to the Strict Liability Design Defect Claim Only. Plaintiffs request the Court reverse its judgment decision to reopen this case to allow Plaintiffs to move forward only as to the claim for Strict Liability Design Defect. Manifest error of fact, mistake, and excusable neglect are the bases for reopening this case. It is unjust to punish the innocent Plaintiffs for the alleged deficiency in their lawyer.

**I.　　PROLOGUE**

Foremost, after reading the Court's Memorandum Opinion and Order (Dkt. No. 62), Plaintiffs' current Lead Counsel T Nguyen is undeniably embarrassed because Counsel prides herself in producing good-quality work product and providing good lawyering. Plaintiffs and Plaintiffs' Counsel humbly and without reservation apologize to the Court and seek the Court's mercy.

In other respects, Plaintiffs Lead Counsel is proud that she was able to work amicably with Defendants' counsel. The parties filed an Agreed Protective Order (Dkt. No. 42) when the parties had not been able to reach an agreement prior. After the Court entered the Protective Order (Dkt. No. 60) on January 11, 2022, the parties filed a Joint (Amended) Scheduling Order (Dkt. No 61) on March 3, 2022. Because no stay had been ordered, Defendants' Counsel had wished to move forward with discovery without the Court's ruling on the 4AC, although Plaintiffs' Counsel had been hesitant to do so without the Court's denial of Defendants' Motion to Dismiss the 4AC. Defendants would have served their supplemental discovery responses by March 23, 2022 to keep the case moving forward.

## II.   FACTS IN THE FOURTH AMENDED COMPLAINT ("4AC") FOR A CLAIM OF STRICT PRODUCT LIABILITY DESIGN DEFECT.

In assessing the adequacy of Plaintiff's claims, the Court must assume that all material facts in Plaintiff's 4AC are true; and all inferences must be resolved in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

For a product liability design defect claim, Tex. Prac. & Rem. Code § 82.005 states:

> "(a)   In a products liability action in which a claimant alleges a design defect, the burden is on the claimant ***to prove* by a preponderance of the <u>evidence</u>** that:
>
> (1)   there was a safer alternative design;  and
>
> (2)   the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.
>
> (b)   In this section, 'safer alternative design' means a product design other than the one actually used that in reasonable probability:
>
> (1)   would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility;  and
>
> (2)   was economically and technologically feasible at the time the product left the control of the manufacturer

or seller by the application of existing or reasonably achievable scientific knowledge." Tex. Prac. & Rem. Code § 82.005 (emphasis added).

Plaintiffs have alleged facts to satisfy the above elements. As alleged, at the core of Plaintiffs' claims is a school bus strict product liability automotive **design defect** case. This strict product liability claim is based on Plaintiffs' factual allegations that the **exterior structure** of the subject bus deformed. This **deformation** caused the right rear wheel and axle to partial dislodge. This caused the rounded right rear **interior wheel well** to deform and en**trap** JA1 by pinning her right foot between the raised wheel well and bottom of the seat frame of the seat in front of her. Because JA1 was trapped by the physical interior structures of the bus (entrapment), she **could not escape** with all the other occupants and burned to death when the subject bus caught fire after the crash.

## III.   ARGUMENT AND AUTHORITIES

### A.   Standard For Reconsideration

Plaintiffs file this Motion for Reconsideration under Fed. R. Civ. P. 60(b)(1) for mistake or excusable neglect and under Rule 59(e) for manifest error of fact. Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest

errors of … fact ..."[1] Rule 60(b)(1) allows relief from judgment or order for "mistake … or excusable neglect."

### B. It Was A Mistake And/Or Excusable Neglect In Not Correcting All Of The Court's Identified Defects In The 4AC.

In good conscience, Plaintiffs believe they stated plausible strict liability and negligence causes of action as to the defect of the exterior structure in the 4AC, but if not, then for the purposes of this Motion, it was excusable neglect, error, or mistake to have not stated the strict liability cause of action more clearly.

The Fifth Circuit states: "the interest in deciding cases on the merits outweighs…the interest in the finality of judgments…" *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984). "[M]uch more reason for liberality in reopening a judgment when the merits have never been considered than there is when the judgment comes after a full trial on the merits." *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985).

The Fifth Circuit has stated that Rule 60(b)(1) should be construed liberally to do substantial justice, especially in cases where the merits have not been reached. *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981).

The U.S. Supreme Court holds that excusable neglect is an equitable determination, "taking account of all relevant circumstances surrounding the party's

---

[1] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

omission." *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993)). Factors to consider are danger of prejudice, the length of delay and its potential impact on judicial proceedings, reason for delay, including whether it was within the reasonable control of the movant, and whether movant acted in good faith. *Id.*

Here, the merits of the case have not been reached prior to dismissal. There is no danger of prejudice or delay to Defendants. Defendants had already desired to proceed with discovery from reviewing the 4AC after entry of a Protective Order. *See* Dkt. No. 61. It is undisputed that all parties have acted in good faith.

Furthermore, the Fifth Circuit is reluctant to affirm dismissals based on conduct attributable to counsel, rather than the plaintiff. *Callip v. Harris Cty. Child Welfare Dep't*, 757 F.2d 1513, 1522 (5th Cir. 1985) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 633, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962)). This lawsuit was first filed September 25, 2020. Plaintiffs' Lead Counsel T Nguyen did not appear in the case until April 9, 2021 after an attempt was already made to file a fourth amended complaint. The circumstances in this case are unique in that two Plaintiff's lawyers approached this product case from different angles and automotive engineering. There were large differences in writing style to describe automotive design engineering and liability theories.

Here, when the alleged deficiency in counsel's performance for this Court was realized, Plaintiff obtained a new lawyer. Plaintiffs' new and current Lead Counsel most likely neglected to understand or mistakenly understood the various liability claims that had prior been alleged or withdrawn before making her *first attempt* at authoring a complaint in this case. Accordingly, in equity, denying relief to an innocent plaintiff would not be justified. *See Dunn v. Apache Indus. Servs., Inc.*, No. CV 17-12777, 2019 WL 3457247, at *2 (E.D. La. July 31, 2019).

For concision, Plaintiffs will address the Court's specific criticisms and correct Plaintiffs mistakes in the following section.

### C. In the Alternative, It Is Manifest Error Of Fact Because Plaintiffs Do State A Plausible Claim In The 4AC.

In good faith, Plaintiffs believe that the filed 4AC (Dkt. No. 50) satisfied the Court's Order (Dkt. No. 43) to allege sufficient facts to state plausible claims for both strict liability and negligence theories of liability against Defendants. However, given the apparent annoyance of the Court by the multiple amendments, Plaintiffs now focus on only a single liability theory. Plaintiffs request reconsideration only as to the strict liability claims in the 4AC (removing claims for negligence, manufacturing defect, and marketing defect) and now offer their Fifth Amended Complaint ("5AC") to reflect this shrunken pleading (and corrections for any mistakes and neglect), attached as **Exhibit 1**.

First, in the 4AC, Plaintiffs alleged many more detailed allegations than the 3AC for the facts undergirding their strict liability claim. These 4AC facts are the facts that must be assumed as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All inferences of economic feasibility and technological feasibility and other elements for Plaintiffs to prove by the evidence must be resolved in Plaintiff's favor. *Id.*

In the 4AC, Plaintiffs narrowed the focus specifically to the defect in structural design and removed all facts on the other two defect theories in the seat structure and fuel system found in the 3AC, Dkt. No. 23, at 8-9.[2] In the 4AC, Plaintiffs outlined in six pages, detailed, factual allegations as a foundation for their design defect claim. *See* Dkt. No. 50, at 3 to 8. Plaintiffs included facts of what, when, where, how, and why, with specific photos to show the Court the plausibility of their structural design defect theory. These factual allegations are based on information before discovery of Defendants' design and engineering documents for the axle and interior components. In contrast, in the 3AC, the Facts section was contained in two pages. *See* Dkt. No. 23, at 5-6.

---

[2] 3AC: "a) **seat structure** that would not collapse entrapping a passenger in the interior of the bus following an otherwise survivable crash (corresponding to paragraph 4a); b) **exterior structure** that would not collapse inward in an otherwise survivable crash such that the passengers were entrapped between the collapsed outer structure and the interior seats so that they could not escape from the burning bus or be removed from the burning bus by others (corresponding to paragraph 4b), and c) **fuel system** integrity that would prevent fuel escape in the event of an otherwise survivable crash through the use of crashworthy fuel lines, valves and disconnects (corresponding to paragraph 4c)." (emphasis added).

1. At the core of Plaintiffs' claims is a school bus strict product liability automotive **design defect** case. *See* Third Amended Complaint ("3AC") Dkt. No. 23, at 6-9 and Fourth Amended Complaint ("4AC") Dkt. No. 50, at 9-10.

2. This strict product liability claim is based on Plaintiffs' factual allegations that the **exterior structure** of the subject bus deformed. *See* (3AC) Dkt. No. 23, at 9[3] and (4AC) Dkt. No. 50, at 9.[4]

3. The exterior structure **deformed** at the right rear wheel and the rear axle partial dislodged. *See* (4AC) Dkt. No. 50, at 4-5,[5] 9.[6]

4. This exterior structural deformation (axle partial dislodgment) caused the right rear **interior wheel well** to deform, **entrapping** JA1 by pinning her right foot between the raised wheel well and bottom of the

---

[3] 3AC: "**exterior structure** that would not collapse inward" (emphasis added).

[4] 4AC: "the **rear axle** partially dislodged during the one-quarter turn crash, the rear wheel well deformed to pin a human body part" (emphasis added).

[5] 4AC: "During the quarter-turn roll of the bus onto its right side, the bus **deformed at the right rear wheel** well where the rear axle partially dislodged. [3 photos showing] Deformed Right Wheel Well and Partially Dislodged Rear Axle" (emphasis added).

[6] 4AC: "the rear axle partially dislodged during the one-quarter turn crash, the rear wheel well deformed to pin a human body part…"

seat frame of the seat in front of her. *See* (3AC) Dkt. No. 23, at 9[7] and (4AC) Dkt. No. 50, at 5-6,[8] 7.[9]

5. Because JA1 was trapped by the physical interior structures of the bus, she **could not escape** with all the other occupants and burned to death when the subject bus caught fire after the crash. *See* (3AC) Dkt. No. 23, at 5[10] and (4AC) Dkt. No. 50, at 5.[11]

Second, the Court required Plaintiffs to assert even more facts that they would only be able to obtain through discovery in this case. But this requirement is not the *Twombly* pleadings standard. In footnote 11 of the Dismissal Order (Dkt. No. 62), the Court quoted the case of *In re DePuy* to require Plaintiffs in the 4AC to allege the specifics of "the costs and benefits of using alternative designs." *In re DePuy*

---

[7] 3AC: "exterior structure that would not collapse inward in an otherwise survivable crash such that the passengers were **entrapped** between the collapsed outer structure and the interior seats so that they could not escape from the burning bus or be removed from the burning bus by others" (emphasis added).

[8] 4AC: "As a result, JA1's right foot became **pinned** inside the bus between the raised wheel well and bottom of the seat frame of the seat in front of her, so JA1 could not escape the fire with the other passengers. [4 photos showing] Space Between Back Round of Raised Metal Wheel Well and Bottom of Seat Frame". (emphasis added).

[9] 4AC: "After the fire consumed the bus, JA1 was extricated with a battery powered spreader **to create space between the bottom of the seat frame and deformed wheel well** to free her right foot." (emphasis added).

[10] 3AC: "All occupants of the bus escaped the post-crash fire except JA1 who was **trapped** in the bus. Although several persons attempted to free her, she remained entrapped and died in the post-crash fire." (emphasis added).

[11] 4AC: "JA1 could **not escape the fire** with the other passengers." (emphasis added).

*Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 765 n.6 (5th Cir. 2018).

> But the *DePuy* footnote 6 only states what Plaintiffs must prove (vs. plead):
>
>> "The alternative design must also be economically and scientifically feasible…, but those requirements are easily satisfied, given that DePuy sold a line of MoP devices." *In re DePuy Orthopaedics, Inc.*, 888 F.3d at 765 n.6.

The text for this footnote 6 gives definition for what must be proved (not pleaded):

> "Texas law defines a safer alternative design as one that 'would have prevented or significantly reduced the risk of the claimant's personal injury ... without substantially impairing the product's utility.'" *Id.*, at 765.

Nothing in these passages requires detailed allegations in a complaint for risk-utility or economic or technological feasibility. Rather, the *DePuy* case was appealed not at the pleading stage but *after trial* when all the evidence had been presented. *Id.* (Trial court "entered judgment on jury verdict in patients' favor, awarding $502 million, and denied defendants' motion for…mistrial... Defendants appealed…").

Nonetheless, Plaintiffs' Counsel mistakenly believed that the words expressly written in the 4AC for the alternative designs were obvious to show there was no reduced utility of the bus (or could be inferred in favor of Plaintiffs)[12] because these

---

[12] 4AC: "(c) It was technologically and economically feasible for the passenger seating area at issue to have been designed and/or manufactured to not deform to pin a passenger inside the bus during the crash sequence in question or to not be equipped as passenger seating space. A safer alternative design includes, but is not limited to: (1) heavier steel and more rigid reinforcement to prevent deformity of the raised wheel well by forces during

alternative designs involve the component parts already existing in the subject bus, except in the fourth alternative design for the "removal of seating immediately behind the raised wheel well." *See* 4AC, Dkt. No. 50, at 10. Plaintiffs now make more obvious in the 5AC by expressly stating there is no reduction in the utility of the bus by these alternative designs, attached as **Exhibit 1**, at 10.[13] Plaintiffs also add a paragraph section to assert that the materials used in the alternative designs would be the same materials the Defendants used in the subject bus.[14]

---

a rollover, here only a quarter-turn roll, (2) stronger attachment of the axle to prevent dislodgement during rollover, here only a quarter-turn roll, (3) blocking off space between the raised wheel well and seat frame above it to prevent little feet of passengers, like JA1, from slipping into or being positioned between the raised metal wheel well and seat frame above it before or during a rollover, and/or (4) removal of seating immediately behind the raised wheel well."

[13] 5AC: "5. The subject bus was unreasonably dangerous following this otherwise survivable crash for the high risk of entrapment of occupants sitting behind the rear raised wheel well. **There is no reduced utility in implementing these alternative designs except in the fourth safer alternative design for removal of the seating row immediately behind the raised wheel wells. This safer alternative design would maximally reduce the number of students the bus could transport by eight.**" (emphasis added).

[14] 5AC: "6. The safer alternative designs would use the same materials that Defendants used in the subject bus. Upon information and belief, for alternative designs (1) and (2) for stronger reinforcement and attachment, steel would be used. For alternative design (3), the same metal sheeting that is used to cover the wheel well or flooring would be used. Alternative design (4) to remove seating would not require any additional material."

Third, Plaintiffs meant for the three allegations of design defect in the 3AC (interior integrity, entrapment, fuel escape)[15] only to identify the problem areas of the bus that were a producing cause of JA1's death. Plaintiffs' new Counsel read the allegations in the 3AC describing the three areas for alternative designs (seat structure, exterior structure, and fuel system) as too generalized and that this was where the Court had also wanted more details,[16] which Plaintiffs obliged with four designs to address the structural defect, as will be explained below.

It is true that in the 4AC, Plaintiffs abandoned the pleadings on the seat structure and fuel system alternative designs because they could not have, in good faith, alleged the safer alternatives in the seat structure and fuel tank without first knowing (through discovery) Defendants' engineering designs for these areas of the bus. Although the Court pointed out that Plaintiffs raised four new alternative

---

[15] 3AC: "4. The 2019 IC school bus was defective in that it: a) **failed to retain interior integrity** following the crash so that the occupants were not entrapped, b) **entrapped JA1** so that neither she nor several others could free her from the burning bus, and c) **allowed the fuel to continue to escape** and ignite after it came to rest." (emphasis added).

[16] 3AC: "8. …These alternative designs include: a) <u>**seat structure**</u> that would not collapse entrapping a passenger in the interior of the bus following an otherwise survivable crash (corresponding to paragraph 4a); b) <u>**exterior structure**</u> that would not collapse inward in an otherwise survivable crash such that the passengers were entrapped between the collapsed outer structure and the interior seats so that they could not escape from the burning bus or be removed from the burning bus by others (corresponding to paragraph 4b), and c) <u>**fuel system**</u> integrity that would prevent fuel escape in the event of an otherwise survivable crash through the use of crashworthy fuel lines, valves and disconnects (corresponding to paragraph 4c)." (emphasis added).

designs (Dkt. No. 62, at 6), <u>these four alternative designs only addressed the defective exterior structure</u> that had allowed the collapse of interior structures (to prevent foot entrapment). The four designs are the undergirding information—*the specific facts*— that give detail to the alternative design allegations that had been previously set out in the 3AC for:

> "**exterior structure** that would not collapse inward in an otherwise survivable crash such that the passengers were entrapped between the collapsed outer structure and the interior seats so that they could not escape from the burning bus or be removed from the burning bus by others (corresponding to paragraph 4b)". *See* Dkt. No. 23, at 9 (emphasis added).

Thus, by giving details of these four alternative designs, dismissal is not warranted because Plaintiffs have alleged more than mere "conclusory statements that amount to a recital of the legal standard for a safer alternative design." *See Harrison v. Medtronic, Inc.*, No. 3:20-CV-1407-S, 2021 WL 4267511, at *5 (N.D. Tex. Sept. 20, 2021) (citation omitted) (concluding that "Plaintiffs do not articulate with any specificity defects in the design … Plaintiffs' proposed safer alternative design is simply a pacemaker that does not have these three alleged design defects.").

  Fourth, entrapment is not a newly raised defect claim. Entrapment has been a continuous theme in every amendment to the Complaint. The 3AC had expressly suggested:

> "…exterior structure that would not collapse inward in an otherwise survivable crash such that the passengers were **entrapped** between the collapsed outer structure and the interior

seats so that they could not escape from the burning bus or be removed from the burning bus by others." *See* (3AC) Dkt. No. 23, at 9 (emphasis added).

As ordered by the Court in Dkt. No. 43, the 4AC stated more materials facts, so as to allow the Court to accept them as true. In six pages exclusively alleging facts to answer the what, when, where, how, and why questions, the 4AC provided the underlying facts for a strict liability design defect claim, to which the Court could draw a reasonable inference of the defect and that Defendants are liable under the *Twombly* plausibility standard.

Specifically, the exterior structural deformation (axle partial dislodgment) caused the right rear interior wheel well to collapse, entrapping JA1 by pinning her right foot between the raised wheel well and bottom of the seat frame of the seat in front of her. Because JA1 was trapped by the physical structures of the bus, she could not escape with all the other occupants and burned to death when the subject bus caught fire after the crash. Allowing an occupant's body part to be pinned inside the bus by exterior deformation during a low-energy, quarter-turn roll is a defect and was a producing cause of JA1's death. Defendants are liable to Plaintiffs because any one of the four proffered safer alternative designs would have prevented JA1's death by foot entrapment, so she could escape the fire with all the other occupants.

## III.   CONCLUSION

For all the above reasons, some areas of the Court's criticism of the 4AC were manifest errors of fact and for the remaining criticisms, Plaintiffs' Counsel made mistakes and her alleged neglect was excusable because of the unique circumstances in changing lawyers. Plaintiffs themselves did not participate in the mistakes or alleged neglect and do not deserve a fatal punishment of their lawsuit.

Plaintiffs wish to move forward with only the strict liability design defect claim, as outlined in the Fifth Amended Complaint. Defendants are not prejudiced or delayed if the case is reopened because they have already planned to restart litigation by supplementing their discovery responses and production to Plaintiffs by March 23, 2022 and Plaintiffs have shrunken their possible claims. Because the merits of the case have not been reached, the Court would be justified to reopen the case and allow the parties to litigate this case.

WHEREFORE, Plaintiffs request the Court (1) find excusable neglect, mistake, and/or manifest error of fact to grant Plaintiffs' Motion for Reconsideration only on their Strict Liability Design Defect Claim, (2) reopen this case, and (3) allow entry of the Fifth Amended Complaint.

Respectfully submitted,

TURLEY LAW FIRM

*/s/ T Nguyen*
T Nguyen
State Bar No. 24051116
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: tn@wturley.com;
      davette@wturley.com

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

This is to certify that on this 5th day of April 2022, a true and correct copy of the foregoing document was filed in the CM/ECF filing system in this Court, which will serve all counsel of record.

      */s/ T Nguyen*
      T Nguyen